**No. 18-55450**

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

_____

NATIA SAMPSON,

*Plaintiff-Appellant*,

v.

COUNTY OF LOS ANGELES, by and through the Los Angeles
County Department of Children and Family Services; NICOLE
DAVIS; AHMED OBAKHUME; DAWNA YOKOYAMA;
GERALDO IBARRA

*Defendant-Appellees*.

On Appeal from the United States District Court
for the Central District of California
No. 5:17-CV-00599-PA-PJW
Hon. Percy Anderson

_____

**APPELLANT'S OPENING BRIEF**

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................... iv

INTRODUCTION .......................................................................................1

JURISDICTIONAL STATEMENT ...........................................................2

ISSUES PRESENTED................................................................................3

STATEMENT OF THE CASE.....................................................................4

SUMMARY OF THE ARGUMENT ........................................................12

ARGUMENT ............................................................................................13

     I.     Standard of Review ........................................................13

     II.    Qualified Immunity ........................................................14

     III.   The District Court Erred in Dismissing Appellant's First Cause of Action for First Amendment Retaliation on the Basis of Qualified Immunity .........................................................................17

          A.    Appellees Had Sufficient Notice of the Contours of First Amendment Retaliation Claims against Government Officials ..................................................................................17

          B.    District Court Rulings under the Ninth Circuit Confirm that Social Workers are Not Entitled to Qualified Immunity for Clear Allegations of First Amendment Retaliation .................19

     IV.   The District Court Erred in Dismissing Appellant's Second Cause of Action for Equal Protection on the Basis of Qualified Immunity ......22

CONCLUSION .........................................................................................26

STATEMENT OF RELATED CASES ......................................................26

CERTIFICATE OF COMPLIANCE ........................................................................26

CERTIFICATE OF SERVICE ................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Anderson v. Creighton*,
    483 U.S. 635 (1987) ............................................................................15

*Bator v. Hawaii*,
    39 F.3d 1021 (9th Cir. 1994) ...........................................................22

*Boyd v. Benton County*,
    374 F.3d 773 (9th Cir. 2004) ...........................................................13

*Capp v. County of San Diego*,
    2017 U.S. Dist. LEXIS 121038 (S.D. Cal. Aug. 1, 2017) .................20

*Capp v. County of San Diego*,
    2017 U.S. Dist. LEXIS 213331 (S.D. Cal. Dec. 28, 2017)................21

*City and County of San Francisco v. Sheehan*,
    135 S.Ct. 1765 (2015) ................................................................ 14, 18

*Elder v. Holloway*,
    510 U.S. 510 (1994) ........................................................................13

*Ford v. City of Yakima*,
    706 F.3d 1188 (9th Cir. 2013)...........................................................17

*Graves v. City of Coeur D'Alene*,
    339 F.3d 828 (9th Cir. 2003).....................................................14, 18

*Greater Los Angeles Council on deafness, Inc. v. Zolin*,
    812 F.2d 1103 (9th Cir. 1987)...........................................................13

*Hardwick v. County of Orange*,
    844 F.3d 1112 (9th Cir. 2017)............................................... 15, 23, 24

*Harlow v. Fitzgerald*,
    457 U.s. 800 (1982).........................................................................14

*Hope v. Pelzer*,
    536 U.S. 730 (2002) ........................................................ 15, 16, 17

*Hughes v. Kisela*,
    862 F.3d 775 (9th Cir. 2016)...........................................................14

iv

*Kneivel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005)............................................................13

*Liston v. County of Riverside*,
    120 F.3d 965 (9th Cir. 1997)..............................................................15

*Mabe v. San Bernardino County*,
    237 F.3d 1101 (9th Cir. 2001)............................................................13

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................. 14, 16, 18

*Medocino Environmental Center v. Mendocino County*,
    192 F.3d 1283 (9th Cir. 1999)............................................................18

*Mendiondo v. Centinal Hosp. Med. Ctr.*,
    521 U.S. F.3d 1097 (9th Cir. 2008)....................................................13

*Osolinski v. Kane*,
    92 F.3d 934 (9th Cir. 1996)................................................................15

*Ostad v. Or. Health Scis. Univ.*,
    327 F.3d 876 (9th Cir. 2003)................................................... 6, 8, 10

*Pearson v. Callahan*,
    555 U.S. 223 (2009) ...........................................................................14

*Rayford v. Omura*,
    400 F.Supp.2d 1223 (D. Haw. Nov. 8, 2005) ............................. 19, 21

*Saucier v. Katz*,
    533 U.S. 194 (2001) ...........................................................................14

*Ta Chong Bank Ltd. v. Hitachi High Techs. America, Inc.*,
    610 F.3d 1062 (9th Cir. 2010)............................................................13

*United States v. Lanier*,
    520 U.S. 259 (1997) ...........................................................................15

*White v. Pauly*,
    137 S.Ct. 548 (2017) ..........................................................................20

*Wilinson v. Torres*,
    610 F.3d 546 (9th Cir. 2010)..............................................................23

**Statutes**

18 U.S.C. § 1621 ........................................................................................23

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................2

42 U.S.C. § 1983 ..........................................................................................2

Cal. Civil Code § 51.9 ...............................................................................24

Cal. Gov. Code § 820.21(a) .......................................................................24

Cal. Pen. Code § 118 .................................................................................23

**Rules**

Frap 28-2.6 ................................................................................................27

FRCP 12(b)(6) ...........................................................................................13

## INTRODUCTION

Appellant brings this appeal to affirm that social workers – like law enforcement and other government workers that investigate and file reports regarding allegations of criminal misconduct – cannot rely on qualified immunity to shield themselves from long-recognized claims of retaliation and sexual harassment solely based on the assertion that social workers couldn't reasonably understand that such conduct was improper under the law. As set forth in the below Statement of the Case, Appellant's claims were dismissed without deciding whether the appellee social workers had in fact violated Appellant's constitutional rights.

The erroneous ruling by the District Court reinforces a dangerous view that social workers may (1) engage in repeated sexual harassment against foster parents and legal guardians, (2) retaliate against anyone who complains of such misconduct to supervisors outside of their department, and ultimately (3) escape any liability by claiming that they do not know any better and therefore are free to continue such misconduct. Appellant requests that this Court of Appeal reverse the District Court ruling so future individuals that volunteer to take legal custody of foster children do not have to live in fear of having to cater to the sexual or romantic demands of a social worker in order to safely and reasonably navigate the foster system.

1

## JURISDICTIONAL STATEMENT

The United States District Court for the Central District of California had jurisdiction over Appellant's federal civil rights claims brought under 42 U.S.C. § 1983, as those claim arose under the Constitution and laws of the United States. See 28 U.S.C. § 1331. This Honorable Court of Appeals enjoys jurisdiction over this Appeal of the final decision and dismissal of Appellant's civil rights claims. See 28 U.S.C. § 1291.

Appellant's substantive civil rights claims – asserting First Amendment Retaliation, denial of Equal Protection under the Fourteenth Amendment, and denial of Due Process under the Fourteenth Amendment – were dismissed by the district court in ruling on Appellees' Motion to Dismiss on October 16, 2017. (See Excerpts of Record (hereinafter "ER") p. 16-26.) The district court granted leave to amend related to the claim of municipal liability. ER p. 26. The district court ultimately entered its final order, dismissing Appellant's lawsuit with prejudice, which was entered on March 6, 2018. (ER p. 15, 142.) Appellant thereafter filed a timely notice of Appeal on April 5, 2018, within the 30 days of receiving notice of the final order. ER 1-14. Appellant therefore timely appeals from the final order dismissing her lawsuit. see 28 U.S.C. § 2107(a).

## ISSUES PRESENTED

(1)     Whether the district court erred in granting qualified immunity to appellee social workers and social worker supervisors for Retaliation in violation of the First Amendment; and

(2)     Whether the district court erred in granting qualified immunity to appellee social workers for sexual harassment/gender discrimination in violation of the Equal Protection Clause of the Fourteenth Amendment.

## STATEMENT OF THE CASE

Appellant brought this lawsuit alleging civil rights claims against various employees of the County of Los Angeles, by and through the Department of Children and Family Services ("DCFS") based on repeated sexual harassment by Appellee Ahmed Obakhume while acting as the legal guardian and caregiver for her biological niece, minor H.S., and subsequent retaliation against her for complaining of sexual harassment. Appellant also asserted a claim of denial of due process, alleging that Appellees retaliated by purposefully submitted false allegations of abuse and neglect against Appellant in an effort to use the juvenile dependency court to strip Appellant of her role as the legal guardian of Minor H.S.

Appellant is the paternal aunt of minor H.S. (ER p. 88, ¶ 19.) At all relevant times, Appellee Obakhume was a social worker employed by appellee County of Los Angeles. (ER p. 84-85, ¶ 4.) At all relevant times, Appellee Nicole Davis was Obakhume's supervisor at the Vermont Corridor Office of DCFS. (ER p. 85, ¶ 6.) At all relevant times, Appellee Dawna Yokoyama was the deputy director of DCFS and had supervisory authority over Appellee Davis and the Vermont Corridor Office. (ER p.85-86, ¶ 7.) At all relevant times, Appellee Geraldo Ibarra was an assistant regional administrator of DCFS and had supervisory authority over Appellee Davis and the Vermont Corridor Office. (ER p. 86, ¶ 8.)

4

In the summer of 2014, Appellant became aware that minor H.S. was in foster care, and that her brother – H.S.' biological father – wanted Appellant to have custody of H.S. (ER p. 88, ¶ 19.) Appellant was informed that H.S.' parents were incarcerated and their parental rights were being terminated. (ER p. 88-90, ¶¶ 19, 26.) On or about November 20, 2014, H.S. was placed in Appellant's care by order of the Los Angeles County Juvenile Dependency Court. (ER p. 93, ¶ 42.) In August of 2015, Appellant was granted legal guardianship of H.S., at the request of H.S.' biological parents and all counsel involved. (ER p. 106, ¶ 82.)

Appellant alleges in her lawsuit that Appellee Obakhume repeatedly sexually harassed Appellant. This included making suggestive comments about Appellant's physical appearance (ER p. 90, ¶ 28; p. 92, ¶ 35; ), inappropriately touching Appellant (ER p. 90, ¶ 28;), and repeatedly telling Appellant that he could be more helpful to her if she obtained a legal divorce from her husband. (ER p. 90-91, ¶ 30; 93, ¶ 40; p. 94, ¶ 45; p. 98, ¶ 59). Appellant initially did not report this misconduct out of fear that complaints would negatively impact her ability to be H.S.' caregiver. (ER p. 93, ¶ 41.)

On February 25, 2015, Appellant complained to Appellee Davis about Appellee Obakhume's conduct. (ER p. 98, ¶ 60.) In response, Appellee Davis pointedly refused to do anything about Appellant's complaint, telling Appellant that Obakhume was one of her "best" social workers and the only employee

5

willing to work with H.S.' biological parents. (Id.) Appellant alleges that Appellee Obakhume continued to sexually harass Appellant, including specifically telling Appellant that her difficulties obtaining appropriate funding for H.S.' needs could be resolved if Appellant ended her marriage. (ER p. 105, ¶ 80.)

Throughout her time working with DCFS, Appellant unsuccessfully attempted to navigate administrative funding requests for which minor H.S. was eligible, due to Appellee Obakhume providing inaccurate information or otherwise preventing Appellant's applications from moving forward. This included Obakhume ignoring her repeated messages to follow up (ER p. 99, ¶ 64), Obakhume failing to provide necessary paperwork or information on funding application processes (ER p.96, ¶ 52; p.105-106, ¶¶ 81, 83-84), or outright lying to Appellant about the requirements for funding (ER p.106-107, ¶¶ 85-86).

In or around September of 2015, Appellant contacted Appellee Ibarra and complained of Appellee Obakhume's harassment and misrepresentations about funding for minor H.S. (ER p. 107, ¶ 87.) Appellee Ibarra apologized to Appellant and promised to resolve the funding issue and remove Obakhume as the assigned social worker. (Id.) Shortly thereafter, Appelle Obakhume threatened to terminate Appellant's guardianship of minor H.S., claiming that Appellant visiting family out of state jeopardized her legal guardianship. (ER p. 107, ¶ 88.)

6

On or about September 25, 2015, Appellant attempted to conduct a face-to-face meeting at the Vermont Corridor Office after learning that Appellee Obakhume was delaying funding for minor H.S. by not providing proper documentation to another DCFS employee. (ER p. 108, ¶ 89.) Appellee Davis, Obakhume's supervisor, refused to meet with Appellant and falsely denied knowledge of the funding issues. (ER p. 108, ¶ 90.)

On October 17, 2015, Appellant arranged visitation with minor H.S. and her biological father. (ER p. 110, ¶ 97.) Previously, Appellee Obakhume told Appellant that the father enjoyed unmonitored visitation, and so allowed the same to occur in good faith. (ER p. 104, ¶ 77.) The father absconded with minor H.S. during the visit, but returned H.S. to Appellant's care the following day. (ER p.110-111, ¶¶ 98-101.) During a subsequent in-person meeting with Appellee Obakhume regarding the incident, Appellant confronted Obakhume about his misrepresentations and refusal to process Appellant's funding requests on behalf of minor H.S., which she attributed to her refusal to submit to his inappropriate sexual advances. (ER p. 113, ¶ 108.) Appellee Obakhume responded by stating, "I don't know where you get off sending all these complaint emails and making all these calls, but you are going to find out that we at the Vermont Corridor stick together, and cover for each other. No one is going to lose their job behind you and your mess, Ms. Sampson." (ER p. 113-114, ¶ 108.) Appellant immediately contacted

Appellee Ibarra and informed him of the interaction. (ER p. 114, ¶ 109.) Appellee Ibarra admitted that he had not acted on Appellant's prior complaints because Appellee Davis assured Ibarra she would address Obakhume's misconduct. (Id.) Appellee Ibarra assured Appellant that he would resolve the matter. (Id.) Later that evening, Appellant was informed by minor H.S.' counsel, Lela Getzler, that Appellee Obakhume had lied to Appellant about visitation requirements for H.S.' biological parents. (ER p.114-115, ¶¶ 110-111.) Appellee Ibarra didn't follow up with Appellant despite assuring her that he would personally deal with Appellee Obakhume's continuing misconduct. (ER p.115, ¶ 112.)

In November of 2015, Appellant cooperated with an investigator interview and home inspection, which she was told was a result of allegations that Appellant abused and/or neglected minor H.S. in her care. (ER p.115, ¶¶ 114-116.) Appellant's family members, current and former spouse, and H.S.' preschool teacher were also interviewed. (Id.) Appellant discovered shortly after that the investigation was based on Appellees Obakhume and Davis filing allegations of child abuse and neglect against Appellant, which Appellant reasonably understood were related to her ongoing complaints of misconduct against Obakhume. (ER 116, ¶¶ 117-119.)

On or about November 14, 2015, Appellant contacted Appellee Yokoyama by email, acknowledging Appellee Obakhume's history of sexual harassment,

8

misrepresentations regarding funding requests and obstructing the same, and Obakhume's assurance that employees of the Vermont Corridor Office – which includes Appellee Davis – "stick together." (ER p.116-117, ¶ 120.) Appellant concluded her email by requesting that H.S.' ongoing juvenile dependency case be transferred away from appellees at the Vermont Corridor Office. (Id.)

Appellant took minor H.S. with her on a brief, previously scheduled Thanksgiving vacation in November of 2015. (ER p.117-118, ¶ 123.) She did so based on her understanding that the trip was permitted based on the prior notification and approval of another social worker, Kilene Short. (ER p.103, ¶ 75.) Appellee Obakhume had also been made aware that Appellant was traveling with minor H.S. during the holiday for that reason. (ER p.104, ¶ 78.) At a subsequent hearing before the Los Angeles County Juvenile Dependency Court on December 9, 2015, Appellant was informed of specific allegations of neglect against her by Appellees, asserting that Appellant endangered minor H.S. by allowing visitation pursuant to Appellee Obakhume's prior instructions, and that Appellant was now accused of fleeing the jurisdiction of the court when she went on a preplanned vacation which she had obtained permission from employees of the Vermont Corridor Office. (ER p.118, ¶¶ 123-126.) Judge McBeth of the Juvenile Court ruled for minor H.S. to remain in Appellant's care, acknowledging serious concerns about the accuracy of the allegations made by Appellees Obakhume and

9

Davis. (Id.) However, Appellees filed an extraordinary writ, challenging Judge McBeth's order, which had the practical effect of causing minor H.S. to be removed from her care for the Christmas holidays. (ER p.118-119, ¶ 127.) On or about January 7, 2016, a California Court of Appeal summarily denied Appellees' extraordinary writ and ordered that minor H.S. be returned to Appellant's care. (ER p.122, ¶ 138.) On or about June 10, 2016, minor H.S.' juvenile dependency case was transferred to San Bernardino County, and Los Angeles County DCFS employees from the Vermont Corridor Office were no longer involved in the matter. (ER p.124, ¶ 147.) The case was closed on or about February 23, 2017, and Appellant remains the sole legal guardian for minor H.S.

On March 29, 2017, Appellant filed her lawsuit in the U.S. District Court for the Central District of California. (ER p.147.) On July 6, 2017, Appellant filed a First Amended Complaint, asserting the following causes of action for violation of civil rights under 42 U.S.C. § 1983: (1) First Amendment Retaliation; (2) 14th Amendment Equal Protection/Discrimination; (3) 14th Amendment Violation of Procedural and Substantive Due Process; and (4) Monell Liability against Appellee County of Los Angeles. (ER p.83-139.) On July 24, 2017, Appellees moved to dismiss all causes of action pursuant to F.R.C.P. 12(b)(6). (ER p.51-82.) Appellant timely opposed the motion to dismiss. (ER p.27-50.) On October 16, 2017, the District Court dismissed Appellant's substantive civil rights claims under the First

and Fourteenth Amendments. (ER p.16-26.) The District Court held that qualified immunity applied to Appellant's claim of First Amendment Retaliation because of no Ninth Circuit precedent applying that cause of action to government workers "outside of the law enforcement, prison, employment, or school context[.]" (ER p.22-23.) With respect to Appellant's claim under the Equal Protection Clause, the District Court conceded that severe and pervasive harassment can qualify as impermissible sex discrimination under the Equal Protection Clause, but that all prior cases were based on government employees in "the workplace, school, or prison context" and therefore qualified immunity applied. (ER p.25.) Separately, the District Court held that Appellant did not have a clearly recognized liberty interest in retaining custody of minor H.S., and so Appellees' use of false allegations to seek removal of minor H.S. from Appellant's care did not violate an established constitutional right and qualified immunity also applied to her due process claims. (ER p.21-22.) However, the District Court gave leave to amend the final cause of action for municipal liability alone, despite dismissing all underlying constitutional claims. (ER p.25-26.) Subsequently, Appellant filed a Second and Third Amended Complaint in a good faith effort to maintain the sole cause of action, but the entire matter was ultimately dismissed and Final Order of Dismissal was entered on March 6, 2018. (ER p.49, 142.) Appellant filed a timely Notice of Appeal on April 5, 2018. (ER p.1-14.)

## SUMMARY OF THE ARGUMENT

I.     Qualified Immunity protects government actors from civil rights claims where their actions – though in violation of a constitutional right – do not infringe on a clearly established right; though government actors may be entitled to the benefit of the doubt when it comes to close decisions, they cannot rely on qualified immunity where their misconduct falls squarely into a category of misconduct long held to be in violation of constitutional principles.

II.     The District Court erred in dismissing Appellant's first cause of action for Retaliation under the First Amendment, because the retaliatory actions by the appellees was knowing, purposeful, and violates clearly established principles. Furthermore, appellees were on notice that such claims had previously been applied to social worker officials. Additionally, the facts alleged by Appellant demonstrate a clear and purposeful attempt to retaliate against her for reporting sexual harassment and related misconduct, which takes appellees outside the context of the good faith notice exception that gives rise to qualified immunity.

III.     The District Court erred in dismissing Appellant's second cause of action for Sexual Harassment in violation of the Equal Protection Clause, because appellee Obakhume had ample notice under state and federal law that engaging in purposeful, unwanted sexual harassment after numerous complaints and requests to cease was unlawful and in violation of Appellant's rights.

12

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal of a complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1102 (9th Cir. 2008). In doing so, the Court accepts "all factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party," here the Appellant Natia Sampson. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); see also *Ta Chong Bank Ltd. v. Hitachi High Techs. America, Inc.*, 610 F.3d 1062, 1066 (9th Cir. 2010). Furthermore, a district court's decision on qualified immunity is specifically reviewed *de novo*. *Elder v. Holloway*, 510 U.S. 510, 516 (1994); see also *Mabe v. San Bernardino County*, 237 F.3d 1101, 1106 (9th Cir. 2001); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1109 n.7 (9th Cir. 1987); *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004) (whether federal rights asserted by a plaintiff were clearly established at the time of the alleged violation is a question of law reviewed *de novo*). Because all of Appellant's substantive claims – alleging civil rights violations under the First and Fourteenth Amendments – were dismissed pursuant to 12(b)(6) based on a finding of qualified immunity, *de novo* review is the proper standard here.

13

## II.    QUALIFIED IMMUNITY

Qualified immunity protects government officials from suits for money damages to the extent that the misconduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Hughes v. Kisela*, 862 F.3d 775, 782 (9th Cir. 2016). The standard set forth by the United States Supreme Court is whether or not the rights alleged to be violated were "clearly established" at the time of the misconduct alleged. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); citing to *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This standard is meant to give breathing room to officials that make reasonable but mistaken judgments, but does not spare "the plainly incompetent or those who knowingly violate the law." *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015); quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1986); see also *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003).

Qualified immunity analysis involves two questions: (1) whether the defendant violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation. *Pearson*, *supra*, 555  U.S. at 232; see *Saucier v. Katz*, 533 U.S. 194, 201 (2001). A public official is not entitled to qualified immunity where the contours of the alleged violation were sufficiently clear that a reasonable official would understand that their actions violated that

14

right. *Liston v. County of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997); citing to *Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996).

This does not mean that any official action is protected by qualified immunity unless the very action in question has been previously held to be unlawful, only that, "in light of pre-existing law, the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Importantly, general statements of the law are not inherently incapable of giving fair and clear warning, and in some general instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though "the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, *supra*, 483 U.S. at 741; quoting *United States v. Lanier*, 520 U.S. 259, 271 (1997); see also *Anderson*, *supra*, 483 U.S. at 640.

The salient question in determining the application of qualified immunity is "whether the state of the law" when the conduct at issue occurred gave the social workers "fair warning" that bringing false allegations of abuse and neglect against the Appellant in order to remove minor H.S. from her care was unconstitutional. *Hope*, 536 U.S. at 741; see also *Hardwick v. County of Orange*, 844 F.3d 1112, 1117 (9th Cir. 2017).

**III. THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S FIRST CAUSE OF ACTION FOR FIRST AMENDMENT RETALIATION ON THE BASIS OF QUALIFIED IMMUNITY**

In dismissing the First Cause of Action, the District Court all but conceded

that Appellant had properly alleged a clear violation of the First Amendment, yet

dismissed the claim for failure of a specific case that involved a social worker – as

opposed to numerous other government officials – committing the same

misconduct. The District Court's ruling on Appellant's First Amendment claim

disregards the nuance of the U.S. Supreme Court rulings in both *Hope v. Pelzer* as

well as *Malley v. Briggs* and subsequent Ninth Circuit precedent that embraces the

core holdings of these decisions.  Additionally, the District Court failed to consider

that other district courts under the Ninth Circuit had previously held that First

Amendment Retaliation claims against social workers were reasonably established

under the law as far back as 2005. As such, the dismissal of this claim must be

reversed.

In ruling on the appellees' motion to dismiss, the District Court

acknowledged that Appellant had clearly alleged that she had complained of the

repeated sexual harassment by Appellee Obakhume, and the appellees retaliated by

engaging in bad faith tactics that culminated in making false allegations of abuse

and neglect against Appellant. (ER p.22.) Additionally, the District Court conceded

that Appellant "correctly states" the elements for a claim of First Amendment

16

retaliation – requiring that (1) the government actor's conduct would chill a person of ordinary firmness from future First Amendment activity, and (2) that desire to chill the plaintiff's speech was a but-for cause of the defendant's allegedly unlawful conduct. (ER p.23); see *Ford v. City of Yakima*, 706 F.3d 1188, 1193 (9th Cir. 2013). However, the District Court then held that "the absence of case law" regarding examples of First Amendment retaliation in foster care placement – as opposed to "law enforcement, prison, employment, or school" settings – required dismissal with prejudice. (ER p.23.)

### A. Appellees Had Sufficient Notice of the Contours of First Amendment Retaliation Claims against Government Officials

The District Court ruling disregards the nuance of Supreme Court precedent of *Hope v. Pelzer* by artificially broadening the application of qualified immunity. The Supreme Court made clear that "general statements of the law" can give reasonable notice to government actors that improper conduct is actionable for civil rights claims, even if a specific case has not applied that rule of law to exact facts of the case. See *Hope v. Pelzer*, *supra*, 536 U.S. at 741.  This language in *Hope* is integral to both the general holding of that case – finding a practice of handcuffing inmates to a hitching post in the sun without a shirt, reasonable access to drinking water, or bathroom breaks violates the Eighth Amendment prohibition

on cruel and unusual punishment – and the existing precedent regarding First Amendment Retaliation claims in general.

As set forth in *Malley v. Briggs* and its extensive progeny, qualified immunity at its core was never meant to protect "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 343 (1986); accord, *Graves v. City of Coeur D'Alene*, 339 F.3d 828, 848 (9th Cir. 2003); see also *City and County of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1774 (2015). Here, Appellant has expressly alleged that Appellee Obakhume, with the support of his supervisors, repeatedly sexually harassed Appellant and withheld services in good faith to compel her to submit to his advances. When that did not work and Appellant complained to higher and higher officials in Los Angeles County, Obakhume and Davis filed false allegations against her in retaliation. Thus, it cannot be said that the appellees in this case are somehow victims of misunderstanding hyper-technical nuances in First Amendment case law, but instead were willfully and maliciously acting to hurt Appellant. This knowing disregard of the basic contours of the First Amendment should not be rewarded with qualified immunity.

This Circuit Court has previously held that the right of an individual to complain about government employees' alleged misconduct without fear of retaliation is long-established under the First Amendment, particularly where the

18

complaint is asserted as a private citizen. See *Dahlia v. Rodriguez*, 735 F.3d 1060 (9th Cir. 2013). Additionally, Ninth Circuit precedent supports retaliation claims by ordinary citizens independent of any employment or contractual relationship between parties. See *Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876 (9th Cir. 2003) (medical resident alleged termination from his residency in retaliation for complaining of improper billing practices); see also *Mendocino Environmental Center v. Mendocino County*, 192 F.3d 1283 (9th Cir. 1999) (environmental protesters alleged that officers retaliated against them for exercising constitutional right of protest).

**B.      District Court Rulings under the Ninth Circuit Confirm that Social Workers are Not Entitled to Qualified Immunity for Clear Allegations of First Amendment Retaliation**

More importantly, however, at least one district court under the Ninth Circuit previously held that social workers violate the First Amendment when they engage in retaliation against someone for complaining of alleged social worker misconduct. In *Rayford v. Omura*, 400 F.Supp.2d 1223 (D. Haw. Nov. 8, 2005), the plaintiff "voiced strong opposition to the policies and practices" of Child Protective Services ("CPS") out of a commercial rental space, culminating in testimony before the Hawaii State Legislature regarding the problems he believed existed at CPS. *Rayford*, *supra*, 400 F.Supp.2d at 1226-27. The plaintiff eventually

19

filed a lawsuit alleging that defendants pressured his landlord to cease renting to the plaintiff in violation of his First Amendment rights. *Id*. at 1228. The district court in that case found that qualified immunity was inapplicable, finding that "a reasonable official would have understood that such actions" violated the First Amendment. *Id*. at 1233.

Admittedly, there is a district court ruling that contradicts the ruling in *Rayford*, but the facts of that case plainly distinguish it from the instant matter and *Rayford*. In *Capp v. County of San Diego*, 2017 U.S. Dist. LEXIS 121038 (S.D. Cal., Aug. 1, 2017), the plaintiffs – a father and his minor children – alleged violations of their constitutional rights, including a violation of the First Amendment for Retaliation for complaints against the social worker defendants when they encouraged the father's ex-wife to file adversarial pleadings in family court. *Capp*, *Supra*, 2017 U.S. Dist. LEXIS 121038 at *2-4. Initially, the district court held that the social workers were not entitled to qualified immunity for the First Amendment claim. *Id*. at *16. However, on a subsequent motion for reconsideration, the district court reversed itself and found qualified immunity to apply. In doing so, the district court relied on the Supreme Court decision in *White v. Pauly*, 137 S.Ct. 548 (2017) – a police misconduct case analyzing an officer's decision to use deadly force without warning after observing shots fired at fellow officers – to hold that application of prior First Amendment precedent to social

20

workers could be considered too high a level of generality to give fair notice. See

*Capp v. County of San Diego*, 2017 U.S. Dist. LEXIS 213331 (Dec. 28, 2017).

The *Capp* decision was premised, however, on facts that the district court

wrestled with in deciding if the defendants were entitled to dismissal. Specifically,

the Court held that "it is not entirely clear from Capp's complaint that defendants'

motives were to punish Capp for exercising his first amendment rights" and

suggested that the social worker defendants recommended that the mother file an

ex parte petition for custody due to legitimate safety concerns regarding the minor

children. *Capp v. County of San Diego*, 2017 U.S. Dist. LEXIS 213331 at *10.

Here, there is no ambiguity, as Appellant alleges that Appellee Obakhume literally

flaunted his awareness of Appellant's complaints and threatened her with the

ominous statement that she would "find out that we at the Vermont Corridor stick

together, and cover for each other." (ER p.113-114, ¶ 108.) Thus, the link between

the exercise of First Amendment rights and the retaliation are far clearer in this

case than in *Capp*. Moreover, there is no indication that the district court in *Capp*

was aware of the precedent in *Rayford*, above, which held that social worker

officials could be held liable for retaliation under the First Amendment as early as

2005.

21

## IV. THE DISTRICT COURT ERRED IN DISMISSING APPELLANT'S SECOND CAUSE OF ACTION FOR EQUAL PROTECTION ON THE BASIS OF QUALIFIED IMMUNITY

In dismissing the Second Cause of Action, the District Court conceded that pervasive sexual harassment could rise to the level of impermissible sex discrimination under the Equal Protection Clause, citing to *Bator v. Hawaii*, 39 F.3d 1021, 1028 & n.7 (9th Cir. 1994). (ER p.25.) The District Court therefore strongly implied – without actually holding so – that Appellant had properly alleged a violation of equal protection in asserting numerous, detailed allegations relating to Appellee Obakhume's sexual harassment of Appellant. However, the District Court then proceeded to conduct the same broad and dismissive analysis of qualified immunity that it applied to Appellant's First Amendment claim, asserting that there was no case "in which a court has found a government employee's sexual harassment of a member of the public" violated their equal protection rights, except in the context of a workplace, school, or prison environment. *Id*., finding that qualified immunity must therefore apply without any determination as to whether the right had been violated.

Similar to the First Amendment Retaliation analysis set forth above, here the District Court completely ignores the practical interpretation of the standards for qualified immunity in favor of conducting a rigid analysis that begins and ends with whether a case with identical factual elements exists. Because Appellee

Obakhume and others were functionally aware that sexual harassment of legal guardians to minors was not permitted under the law, they cannot reasonably use qualified immunity as a shield to avert liability for their actions here.

The decision in *Hardwick v. County of Orange*, 844 F.3d 1112 (9th Cir. 2017) is particularly instructive on this point. In that case, the misconduct alleged was willfully falsifying allegations of abuse to the juvenile dependency court to separate a biological parent from their children. There, the Ninth Circuit properly acknowledged that the individual defendant social workers could not plausibly claim they did not know that lying under oath in reports and in statements to the court was in violation of established law. See *Hardwick v. County of Orange*, 844 F.3d at 1119 (acknowledging that perjury is a crime under both state and federal law – see Cal. Pen. Code § 118 and 18 U.S.C. § 1621, respectively). Importantly, the *Hardwick* court pointed out that misrepresentations by social workers to a juvenile dependency court was not made in the "heat of the moment" that often gives the benefit of the doubt to peace officers engaged in split-second decisions. *Hardwick*, at 1119 (finding that such transgressions "were not made under pressing circumstances requiring prompt action, or those providing ambiguous or conflicting guidance"); compare to *Wilinson v. Torres*, 610 F.3d 546, 555 (9th Cir. 2010) (discussing the effect of practical deliberation available to a government actor in determining whether their conduct meets the standard for a violation of 42

U.S.C. § 1983). The *Hardwick* court went on to point out that the California legislature purposefully amended the Government Code to make clear that social worker misconduct by way of perjury was clearly unacceptable, and removed civil immunity as a result of well-known examples of social worker misconduct that involved purposeful misrepresentations to the juvenile dependency court. *Hardwick* at 1119, citing to Cal. Gov. Code § 820.21(a).

California long ago codified into statute the existence of civil liability for individuals that engage in sexual harassment in the context of a professional relationship. Under California Civil Code § 51.9, a person is liable for sexual harassment where (1) there is a "business, service, or professional relationship" – expressly including but not limited any individual that holds "a master's degree in social work" or any relationship that is "substantially similar" to that; (2) the individual "has made sexual advances, solicitations, sexual requests, demands for sexual compliance," or otherwise engaged in verbal conduct of a sexual nature that was unwelcome and pervasive or severe; (3) there is an inability by the plaintiff to easily terminate the relationship; and (4) the victim has suffered or will suffer economic loss or disadvantage or personal injury, or the violation of a statutory or *constitutional right* as a result. See Cal. Civil Code § 51.9(a)(1-4).

It is completely disingenuous for appellees to state that they were not put on reasonable notice that it was both wrong and an invitation for potential civil

24

liability to engage in sexual harassment of legal guardians to minors under the jurisdiction of the juvenile dependency court. To state otherwise is to ignore both the existence of California statutes expressly creating liability for sexual harassment, as well as the plain language set forth in *Hardwick*, that the ready existence of long-standing statutes forbidding misconduct – including perjury, whether to separate biological families or to retaliate against someone who complains about misconduct – is known to be in violation of the law.

## CONCLUSION

For the foregoing reasons, the judgment of the district court dismissing Appellant's First and Second Causes of Action should be reversed, and the case should be remanded back to the district court to allow Appellant to proceed with discovery and trial on the merits of her claims.

Date: July 3, 2018

Daniel C. Sharpe, Esq.

*/s/ Daniel C. Sharpe, Esq.*
Daniel C. Sharpe, Esq.
Law Offices of Vincent W. Davis & Assoc.

*Attorneys for Appellant Natia Sampson*

## STATEMENT OF RELATED CASES

Appellant, by and through her Counsel of Record, Daniel C. Sharpe, Esq., is unaware of any case now pending before the Ninth Circuit Court of Appeals that is "related" as set forth in F.R.A.P. 28-2.6.

Date: July 3, 2018

Daniel C. Sharpe, Esq.

*/s/ Daniel C. Sharpe, Esq.*
Daniel C. Sharpe, Esq.
Law Offices of Vincent W. Davis & Assoc.

*Attorneys for Appellant Natia Sampson*

27

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains <u>5,539</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Times New Roman 14-point font.

Date: July 3, 2018

Daniel C. Sharpe, Esq.

*/s/ Daniel C. Sharpe, Esq.*
Daniel C. Sharpe, Esq.
Law Offices of Vincent W. Davis & Assoc.

*Attorneys for Appellant Natia Sampson*

28

## CERTIFICATE OF SERVICE

I hereby certify that on July 3, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date: July 3, 2018

Daniel C. Sharpe, Esq.


*/s/ Daniel C. Sharpe, Esq.*
Daniel C. Sharpe, Esq.
Law Offices of Vincent W. Davis & Assoc.

*Attorneys for Appellant Natia Sampson*